GELDER v. WELSH.

1. EVIDENCE—SECONDARY PROOF OF WRITTEN INSTRUMENT—BILLS AND NOTES.

Whether a copy of a lost note was admissible in evidence after plaintiff's witnesses testified to making search for it in places where it was likely to be, was for the trial court.

2. SAME.

Preliminary evidence that plaintiff gave the note, on which action was brought, to his attorneys, who forwarded it to a correspondent in Detroit, and the testimony of such attorney that he had searched for the note in his safe and in files in his office but could not find it, and other testimony tending to show diligent effort to find the document, furnished a sufficient foundation as to the loss of such writing.

3. BILLS AND NOTES—WAIVER OF PROTEST—PRESENTMENT.

Where a promissory note was not protested at the time it was sent to the place of payment, and defendant, an indorser and

secretary of the maker, who was notified of the presentment, wrote requesting an extension of time, stating that he had asked the bank to hold the note until plaintiff replied, defendant knowing that the maker had no funds in the bank with which to pay the obligation, there was evidence for the jury on the question of waiver.

4. EVIDENCE—LETTERS—IDENTIFICATION.

Letters which were not properly proved before being admitted in evidence, but later identified, or shown to have been received in due course of mail in answer to previous correspondence, were not erroneously received.

5. SAME—BOOKS—NOTICE.

Books of the maker, a corporation, used on cross-examination and offered to show that defendant knew the maker had no funds in the bank to meet the note, were competent.

Error to Wayne; Hosmer, J. Submitted January 17, 1912. (Docket No. 106.) Decided March 29, 1912. Rehearing denied June 1, 1912.

Assumpsit by Daniel Gelder against Allie R. Welsh upon a promissory note. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Joslyn*, for appellant.

*Jackson, Millis, Culver & Griffin*, for appellee.

STEERE, J. This action was brought to recover upon an alleged promissory note, a copy of which, attached to the plaintiff's declaration upon the common counts, reads as follows:

"CHICAGO, ILL., July 18, 1903.
"November 9, 1903, after date for value received we promise to pay to order of A. R. Welsh $1,000.00 at Chelsea Savings Bank, Chelsea, Mich., with interest at 6% after date till paid.

       [Signed]     "CHELSEA MFG. CO., Ltd.
                    "A. R. WELSH, Sec'y.
                    "J. D. WATSON, Treasr."

Indorsed: "A. R. Welsh."

Defendant's plea is the general issue, with a lengthy notice stating that the copy attached to plaintiff's declaration is not a true copy of a note executed by the Chelsea Manufacturing Company, Limited, on July 18, 1903; that defendant never indorsed a note like said copy; that the note actually executed on that date by said company, purporting to be indorsed by defendant, was never presented and protested for nonpayment; that an automobile was given as collateral security to the note given on that date, which plaintiff subsequently sold, after maturity of said note, realizing the full consideration of the note therefor, which he failed to apply in payment of said note; that plaintiff filed a claim in the United States District Court for the Eastern District of Michigan in bankruptcy against said manufacturing company, making proof of claim under the original note executed on July 18, 1903, fraudulently failing to give credit for the proceeds of the sale of said automobile; that in the first instance, at the time of receiving said automobile as security, said plaintiff only advanced $900 on said note and collateral, and that said note has been fully paid.

In 1903 the Chelsea Manufacturing Company, a limited partnership, was engaged in manufacturing sheet metal novelties and automobiles at Chelsea, Mich. A. C. Wisner, of Battle Creek, was president and chief owner. J. D. Watson was treasurer. Defendant, a mechanical engineer, was secretary and one of the managers. P. W. Strong was agent for the sale of the company's automobiles in Chicago, and R. F. Beardsley was assisting him. The company was short of funds, and Beardsley, in its behalf, applied to plaintiff in Chicago for a temporary loan to be used in repairing an automobile and promoting sales in his agency. Defendant was in Chicago at the time trying to get said automobile in running order. A loan was finally negotiated, for which a note was given for $1,000 indorsed by Beardsley, and signed by defendant as secretary of the company. It is claimed and denied that defendant also indorsed it personally. The note

was also secured by a bill of sale of the automobile, which belonged to the manufacturing company. Plaintiff advanced on said note $900, giving defendant a check for the amount. The original note was payable 90 days from date, and was not paid, but in November, 1903, a renewal note dated July 18, 1903, and payable November 9, 1903, at Chelsea Savings Bank, was sent to the plaintiff, which he kept, retaining, also, the original, for the reason, as he claims, that the renewal note was not indorsed by Beardsley. Neither of these notes was ever paid. Subsequently the Chelsea Manufacturing Company went into bankruptcy. Plaintiff made proof of his claim in that court against the said company, and the same was allowed by the referee in bankruptcy at $750. This case was tried in the circuit court of Wayne county before a jury, a verdict being rendered in favor of the plaintiff for $664.50 on the basis of the amount of said claim as fixed in the bankruptcy court against the Chelsea Manufacturing Company, less dividends paid through the bankruptcy proceedings. This suit is brought to recover on the renewal note. The note itself was not produced in court, the claim being that it was lost while in the hands of an attorney during proceedings before the bankruptcy court. There was no proof that the note was protested when due.

Testimony was introduced under which it was claimed protest had been waived, and it was sought to prove the note by a sworn copy, supported by other secondary evidence. Defendant's assignments of error chiefly center around rulings of the court in relation to these two questions. It is urged the judgment should be reversed for the following reasons:

(1) That there is no evidence in this record that defendant indorsed the alleged renewal note involved in this case.

(2) That there was insufficient proof of the loss to permit the alleged copies made by Butzel to be admitted in evidence.

(3) That, even if defendant had indorsed the notes, the neglect of plaintiff to have the note protested released defendant from liability.

(4) That the admission of exhibits, letters, ledger of Chelsea Manufacturing Company, showing account with the Chelsea Savings Bank was clearly error, and most prejudicial.

The first three reasons urged are contingent on there being evidence in the record which raised issues on the propositions stated for the trial court or jury to decide.

It was for the court to determine whether secondary evidence of the note was admissible. In *Thomson* v. *Railroad Co.*, 131 Mich. 95 (90 N. W. 1037), it was said:

"The question whether the loss has been sufficiently proved must be decided by the court at the trial. It is not a question for the jury. Those relying upon a lost document must establish the execution of the document, its loss, and a diligent but unsuccessful search for it in places where it is most likely to be found."

The court in ruling on the admission of secondary evidence does not necessarily decide the foundation issues of the case presented by the pleadings, though some of them may be directly involved, but, when a copy or other secondary evidence of a document is offered, it presupposes the existence of an original, which would be the best evidence. It must therefore be shown that the original is lost or destroyed, or otherwise beyond the power of the party to produce it, before secondary evidence can be admitted. This preliminary proof of inability to produce an original document is addressed to the trial judge, who decides from such proof whether the evidence offered is the best evidence obtainable. If so, it is admitted, and is for the jury to pass upon.

Plaintiff testified he gave the note sued on, together with the one given when the loan was negotiated, to his attorneys in Chicago to prepare proof of his claim to be filed in the bankruptcy court in Detroit. Mr. Butzel, an attorney of Detroit, testified to receiving such notes at-

tached to the proof of claim from the Chicago attorneys; that he made proper proof of them in the bankruptcy court, left copies there, and was allowed to withdraw the originals; that he cannot find the originals, has no letter or trace of having returned them, has been insistently written to by plaintiff and the Chicago attorneys for them; that, after careful investigation and diligent search and research, he and his brother signed a bond for the lost note in question, he stating in that connection, "My recollection is that they were lost in our office." Plaintiff testified to having made repeated diligent, but unsuccessful, search and inquiry in every place where the note had been or was most likely to be found, among his own papers, and among the papers of the attorneys in Chicago. This testimony being undisputed, the court was justified in holding that reasonable search had been made and the loss proven. Two copies of the note were introduced in evidence, one of which plaintiff testified he made, with the original before him, at the time proofs were prepared for the bankruptcy court, and one made by attorney Butzel at the time of the hearing before the referee in bankruptcy. Butzel first testified that his copies had been made from the original, and later on that, if not so made, from a copy attached to the proof of claim, which is the copy plaintiff testified was made by him from the original. A compared copy of the note, with oral testimony of the genuineness of the signatures to the original, were before the court with the proof of loss and diligent but unsuccessful search. We think under such testimony the copies were admissible as secondary evidence, to be considered by the jury. *Phillips* v. *Benevolent Society,* 125 Mich. 186 (84 N. W. 57).

There was a square issue of fact as to whether or not defendant indorsed the note in question. He denied doing so. Plaintiff testified that he knew defendant's signature and had seen him write; that the note came as renewal of a former note indorsed by defendant, following correspondence with defendant upon that subject; and that it

was not only signed by defendant as secretary of said company, but personally indorsed by him in his own handwriting, identified as such by plaintiff. There was much other testimony in the case bearing directly and indirectly upon that particular issue, which it is not necessary to detail, but was properly for the jury to consider and was submitted to them by the court in a correct and carefully guarded charge.

It is admitted that the note in question was not protested when due, but evidence was introduced showing that it was sent to the Chelsea Savings Bank, the place of payment, and defendant notified that it was presented for payment; that he wrote requesting an extension of time on the note, stating that he had asked the bank to hold it until they heard from the plaintiff "or ourselves to the contrary," adding:

"We trust, however, we can close matters up this week, but don't believe it will be in time to take care of the note on the 12th."

Defendant was secretary and a manager of the company, and knew of its financial affairs   He had notice that this note was presented at the place of payment when due, that the company had no funds on hand to pay it and could not pay it, and he asked for time.   We think, under such testimony, there was evidence of waiver sufficient to submit the question to the jury under the authorities reviewed in *Bessenger* v. *Wenzel*, 161 Mich. 61 (125 N. W. 750, 27 L. R. A. [N. S.] 516).

A quantity of correspondence, mostly between plaintiff and the manufacturing company, was introduced in evidence under objection.   Much of this correspondence was dictated by defendant.   We do not deem it necessary to review these objections in detail, but conclude that the letters, if not properly proven at the time, were later identified by defendant or the stenographer of the company, or shown to have been received in due course of mail in answer to previous letters.   Several letters, not signed by

defendant, were shown by the testimony of the stenographer to have been dictated by him. While some of these have slight bearing upon the issues involved, we do not consider them incompetent, as they tended to show the general history of the transaction, and do not appear to contain anything prejudicial to the defendant.

A page of the ledger of the manufacturing company was used by plaintiff to refresh defendant's recollection when examining him as a hostile witness, and, after being identified by him, was introduced in evidence for the purpose of showing his knowledge of the financial condition of the company and the fact he knew it had no money in the Chelsea Savings Bank to meet the note when due and presented for payment. For that purpose we consider its admission was not error. Defendant was a manager of the company, acquainted with its financial condition, assisted in the endeavor to raise money for it, and asked for an extension of time on its paper.

The issues involved in the case were submitted to the jury under a full and careful charge, explaining the principles of law applicable to such issues, and we find in the record, taken as a whole, no prejudicial error.

Judgment is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.