WILLIAM H. KNICKERBOCKER v. LUTHER T. WILCOX.

*Principal and agent—National bank—Contract—Liability of cashier —Judgment—Evidence.*

1. The cashier of a *national* bank wrote a letter to the cashier of a bank in 'a neighboring state stating, in effect, that, if he would sign a bond for customers of the writer's bank to enable them to commence a replevin suit, "we will stand between you and all harm," which letter he signed officially. And it is held that the agreement was one which the national bank had no power to enter into, and that it cannot be said that the letter, upon its face, appears so clearly to have been intended as the undertaking of the bank, executed through the writer as its cashier and agent, as to bring it within the rule that his want of authority to bind the bank, for which he assumed to act, does not render him individually liable, when the facts and circumstances indicate that no such liability was intended by either of the parties.

2. The judgment record in a suit upon a replevin bond brought in the state of Indiana showed a copy of the bond set out at length in the complaint, as the only cause of action relied on; and it is held that it will be presumed in support of the judgment that it was rendered after due proof of the execution of the bond declared on.

3. Where a paper is beyond the jurisdiction of the courts of this State, its contents may be shown by secondary evidence.

4. Whether a judgment was secured by fraud and collusion is a question to be submitted to the jury under proper instructions,

Error to St. Joseph. (Loveridge, J.) Argued October 30, 1890. Decided November 14, 1890.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Howell, Carr & Barnard,* for appellant, contended:

1. Bellam & Handy, being parties to the judgment introduced in evidence, are precluded from disputing the grounds upon which

they were rendered; citing *Pierson Township v. Township Board*, 49 Mich. 224; *Mitchell v. Chambers*, 43 Id. 158; and there was such a privity between Wilcox and the parties defendant in these judgments as also to preclude him from impeaching them.

2. By entering into an unqualified agreement to become responsible for the result of the proposed litigation, Wilcox was bound by the judgment rendered therein whether he had notice or not; citing 12 Am. & Eng. Enc. Law, p. 97, § 13; *Collins v. Mitchell*, 5 Fla. 364; *Riddle v. Baker*, 13 Cal. 295; *Pico v. Webster*, 14 Id. 202; *Shepard v. Pebbles*, 38 Wis. 373; *Willey v. Paulk*, 6 Conn. 74; *Methodist Churches v. Barker*, 18 N. Y. 465.

3. The contract made by defendant's letter was neither that of guaranty nor suretyship, but an independent one on a sufficient consideration of its own; citing *Larson v. Jensen*, 53 Mich. 427; *Horn v. Bray*, 51 Ind. 555; *Crawford v. Turk*, 24 Gratt. 176.

4. The judgments were obtained in the customary manner, as appears from the transcripts introduced in evidence, and in the course of regular proceedings, and the court should not have allowed defendant to contradict them; citing *Williams v. Vail*, 9 Mich. 162; *Lothrop v. Southworth*, 5 Id. 436; *Hershler v. Reynolds*, 22 Iowa, 156; and the judgments, being valid in Indiana, must be given the same force and effect here as they had there; citing 12 Am. & Eng. Enc. Law, pp. 148*o*, 148*r*, and notes.

5. Whenever a person undertakes to do an act as agent of another, without authority, or if he exceeds his authority, he will be personally responsible in some form of action to the person with whom he is dealing; citing Thomp. Liab. Off. 78; Story, Agency, § 264; Wharton, Agency, § 524.

6. When a person assumes to act and contract as agent of a person or of a corporation, he must see to it that his principal is legally bound by his acts, for if he does not give a right of action against his principal the law holds him liable; citing *Randall v. Van Vechten*, 19 Johns. 60; *White v. Skinner*, 13 Id. 307; *Tippets v. Walker*, 4 Mass. 595; *Johnson v. Smith*, 21 Conn. 634; *Underhill v. Gibson*, 2 N. H. 352.

7. If Wilcox undertook to bind the bank by his letter, he did so without authority, and is personally liable upon the agreement contained therein, if there are apt words to bind him, striking out those which he had no authority to put therein; citing *Weare v. Gove*, 44 N. H. 196; *Weare v. School-dist.*, Id. 189; *Royce v. Allen*, 28 Vt. 234; *Brockway v. Allen*, 17 Wend. 40; Story, Agency, § 264*a*.

8. Affixing the word "cashier" to his name, without stating that he signed the letter in such official capacity, will be held mere matter of description; citing *Bond v. Railroad Co.*, 62 Mich. 651; *Tilden v. Barnard*, 43 Id. 376; nor will the use of the word "we" instead of the pronoun "I" excuse him from liability; citing *Dederick v. Barber*, 44 Mich. 19.

9. The agreement of defendant was broad enough to cover attorney's fees paid in defense of an action on the bond; citing *Noll v. Smith*, 68 Ind. 188; *Wilson v. Root*, 43 Id. 486; *Raupman v. Evansville*, 44 Id. 392; *Ziegler v. Powell*, 54 Id. 173; *Finckh v. Evers*, 25 Ohio St. 82.

*S. M. Constantine* and *Dallas Boudeman,* for defendant, contended:

1. There can be no question but that Mr. Wilcox was acting or purporting to act for the corporation of which he was one of the officers. The parties Bellman & Handy were not customers of Mr. Wilcox individually, but of the bank. The use of the word "ours" unquestionably points to the bank, and the statement that "we will stand between you and all harm" is as strong as language can make it, that it was the corporation, and not Mr. Wilcox, who was making the agreement, whatever it was. This proposition cannot be answered by saying that Mr. Wilcox had no authority to bind the bank. There is no proof that he had none, and such a fact must be shown if relied upon. If the plaintiff seeks to recover on the ground that defendant exceeded his authority in that he attempted to act for the bank, and thereby in some way became himself responsible, he must show as a matter of fact that he did so exceed his authority, and not ask the court to presume it. The principle is that so long as he was cashier of the bank, and pretended to act for it, the contract is that of the bank, and not of Mr. Wilcox individually; citing *Carpenter v. Farnsworth*, 106 Mass. 561; *Means v. Swormstedt*, 32 Ind. 87; *Bank v. Hall*, 44 N. Y. 395; *Houghton v. Bank*, 26 Wis. 663; *Kennedy v. Bank*, 7 Neb. 59.

2. Nor can this question be disposed of by saying that national banks cannot enter into a contract of this character. The law creating them makes no such restriction or regulation. If, as a matter of law, the bank could not make such a contract, then the plaintiff is presumed to know what the law is in this regard, and, knowing the law, he must be presumed to know that an officer purporting to enter into a contract or obligation for a corporation when he cannot legally make such an agreement does not make himself liable personally; citing *Bank v.*

*Hanmer*, 14 Mich. 208; *Garton v. Bank*, 34 Id. 279; *Bank v. Bank*, 1 Doug. 457.

3. There can be no question but that this contract is, in form, a contract of the bank. All its language shows this, and it is signed officially by the cashier of the bank. This action is brought against the defendant individually on the contract. If the defendant is liable at all for having exceeded his authority for acting when he had no authority, such liability is not upon the contract, but rests upon the ground that he warrants his authority. The suit as framed here, and set forth in the declaration, could not be sustained; citing *White v. Madison*, 26 N. Y. 117; *Baltzen v. Nicolay*, 53 Id. 469; *Bartlett v. Tucker*, 104 Mass. 336; *Bank v. Pepoon*, 11 Id. 292; *Jefts v. York*, 4 Cush. 371; *Abbey v. Chase*, 6 Id. 54; *Draper v. Heating Co.*, 5 Allen, 338; *Ogden v. Raymond*, 22 Conn. 379; *Taylor v. Shelton*, 30 Id. 122; *Lazarus v. Shearer*, 2 Ala. 718.

4. In a case like the present, the bare want of authority in the agent to bind the person or corporation for which he assumes to act does not render him individually liable where the facts and circumstances indicate that no such liability was intended by either of the parties. Where the facts are known to both parties, and the mistake is one of law as to the liability of the principal (as, for example, that the corporation could not be bound by the agreement), the fact that the principal cannot be held is no ground for charging the agent with the liability; citing *Michael v. Jones*, 84 Mo. 578; *Humphrey v. Jones*, 71 Id. 62; *Cement Co. v. Jones*, 8 Mo. App. 373.

5. Where the fact that the agent has no authority is known or could be known to either party, the agent could not be responsible for any contract so entered into. This would certainly be the case if the guaranty by the bank could not be legally made; citing *Hall v. Lauderdale*, 46 N. Y. 70; *Smout v. Ilbery*, 10 Mees. & W. 1; *Tiller v. Spradley*, 39 Ga. 35; *Newman v. Sylvester*, 42 Ind. 106; *McCubbin v. Graham*, 4 Kan. 397; *McCurdy v. Rogers*, 21 Wis. 197.

6. The authority of Wilcox to bind the bank is presumed. The law will not presume his want of authority, and, unless he is shown to have been acting for the bank without authority in fact, he could not be held in any form of action; citing *Walker v. Bank*, 9 N. Y. 587.

7. Where a party cashier of a bank does business purporting to be in favor of the bank, and his name is used, and the word "cashier" following it, the contract is a contract of the bank, and not that of the individual; citing *Babcock v. Beman*, 11 N. Y. 200; *Garton v. Bank*, 34 Mich. 280.

CAHILL, J. This was an action of *assumpsit* brought to recover upon a written undertaking to indemnify the plaintiff against all harm by reason of his signing a replevin bond with Bellman & Handy in a suit brought by them against Naomi Warner, at Elkhart, Ind. The following is the undertaking sued on:

"JOHN COX,     HENRY HALL,     L. T. WILCOX,     E. E. WILCOX,
    President.        Vice President. .        Cashier.        Asst. Cashier.
                "Established 1872.     Reorganized 1884.
                    "THREE RIVERS NATIONAL BANK.
                            "THREE RIVERS, MICH., OCT. 11, 1886.
"W. H. KNICKERBOCKER, Cashier,
                        "Elkhart, Indiana.
    "*Dear Sir:* A replevin suit has been commenced in your county by Bellman & Handy, of this place, against Naomi Warner, of your place. They (B. & H.), being non-residents, are required to give bonds. They are good customers of ours, and if you will sign said bond we will stand between you and all harm.
                                "L. T. WILCOX, Cashier."

Defendant pleaded the 'general issue, and gave notice that it would be shown on the trial that the defendant did not, in any way, individually enter into the contract alleged in plaintiff's declaration; and also that if he ever did, either individually, personally, or as the agent or in behalf of another, enter into such contract, the conditions of the same had been fully satisfied and performed.

It is claimed by the plaintiff that, on the strength of defendant's letter, he signed the replevin bond as requested, as surety for Bellman & Handy, and that the same was delivered to the sheriff, who thereupon delivered the property taken under the writ to Bellman & Handy; that the replevin suit came on for trial in the Elkhart circuit court, and Bellman & Handy were defeated. The defendant elected to take a judgment for a return of the property. To satisfy such judgment the same was returned to her. Nevertheless, she insisted

that certain goods were not returned, and that other goods were returned in a damaged condition, and she brought suit upon the replevin bond in the Elkhart circuit court against Bellman & Handy, as principals, and Knickerbocker, as surety, to recover such damages. Bellman & Handy and Knickerbocker each employed Mr. VanFleet as attorney to defend that action. There is no legal evidence in the record that Mr. Wilcox had notice of this suit, or opportunity to defend it. Upon the trial of this suit on the replevin bond, Mrs. Warner, the plaintiff, recovered a verdict for $107.50, and costs. The court, on motion of defendants, granted a new trial, and, when the same was about to come on for a second trial, Mr. VanFleet, being of the opinion that it would be cheaper and better for his clients to compromise the suit than to try it, took the responsibility to effect a settlement, and for that purpose consented that Mrs. Warner might take a judgment against his clients for $50, and costs of the first trial. At this time, neither Bellman, Handy, nor Knickerbocker was present in court, or had any knowledge of such proposed settlement. But Bellman & Handy were at once notified of the same, and, upon their objecting to such judgment, were informed by their attorney, Mr. VanFleet, that Mrs. Warner was also dissatisfied, and that her attorney would consent to set aside the judgment and have a new trial, and that they could employ other counsel if they wished. This offer was not accepted, and the judgment of $50, and costs, was allowed to stand, and the plaintiff, Knickerbocker, paid the same, on January 18, 1888, amounting in all to $183.75.

Afterwards, Mr. VanFleet presented a bill to Bellman & Handy for his services in the defense of the suit on the replevin bond. They refused to pay it, and he commenced suit in the Elkhart circuit court against Mr.

Knickerbocker for the same bill. Thereupon Mr. Knickerbocker notified Mr. Wilcox personally of the fact that he had been sued, and that it was necessary for him to appear and defend. To this notice Mr. Wilcox paid no attention. In that suit a judgment was recovered by Mr. VanFleet against Mr Knickerbocker for $150 damages, and $10.50 costs, which Mr. Knickerbocker afterwards paid. After the payment of these two judgments, Mr. Knickerbocker called upon Mr. Wilcox to make good his agreement and save him harmless by reason thereof. This Mr. Wilcox refused to do, and this action was brought.

Upon the trial the plaintiff offered in evidence the letter written by Mr. Wilcox to him, October 11, 1886, upon the strength of which he claimed to have signed the replevin bond. This was objected to by defendant, upon the ground that it was not the undertaking of the defendant, but it appeared upon its face to be the undertaking of the Three Rivers National Bank, of which Mr. Wilcox was cashier. The objection was overruled, and the letter admitted.

Plaintiff also offered in evidence transcripts of the two judgments rendered against him in the Elkhart circuit court, and which he claimed he had been compelled to pay. These were objected to by the defendant upon the ground that it did not appear from any evidence in the case that the plaintiff had signed any replevin bond, as requested by defendant, and that it was incumbent upon the plaintiff to show the original of such bond, and that the plaintiff had, in fact, executed the same. The original of the replevin bond was not produced nor offered in evidence upon the trial. But what purported to be a copy of such bond, found in the transcript of the suit brought on the replevin bond, was offered, together with evidence by Mr. Knickerbocker and Mr. VanFleet that

the same was a true copy of the original bond. It was not shown that the original bond was lost, nor was the failure to produce it accounted for, otherwise than by evidence that it was delivered originally to the sheriff in Indiana, and sued on by Mrs. Warner in that state.

The defendant was allowed, on cross-examination of plaintiff's witnesses, to interrogate them in relation to facts having a tendency to impeach the judgments upon the ground that they were collusive and fraudulent as to Wilcox. This was objected to by plaintiff's counsel, and error is assigned upon this ruling.

When the plaintiff had rested his case, the court, on motion of the defendant's counsel, instructed the jury to render a verdict for defendant. Error is assigned upon this ruling.

It does not appear upon what ground this instruction was given. It is defended by counsel for defendant upon the ground, first, that the alleged guaranty was not and did not purport to be the individual guaranty of the defendant, Wilcox; that he was acting for the Three Rivers National Bank, in his official capacity, as cashier. Undoubtedly, if the paper in question had been a note or bill of exchange, or any other instrument which it was clearly within the power of the cashier to make for the bank, no question could be raised as to its being the contract of the bank. But in this case the paper relied on shows on its face that it was given in the course of a transaction which the bank could not lawfully enter into. National banks possess only such powers as are expressly conferred upon them by the act of Congress under which they are organized, and no power is given them to enter into contracts of suretyship in which they have no interest. Rev. Stat. U. S. § 5136; *Bullard v. Bank*, 18 Wall. 589; *Matthews v. Skinker*, 62 Mo. 329; *Wiley v.*

*Bank,* 47 Vt. 546; *Bank v. Hoch,* 89 Penn. St. 324. This rule of law must be presumed equally well known to both parties.

The paper not being the contract of the .bank, then, can it be said to be the contract of Wilcox himself? Does it, upon its face, appear so clearly to have been *intended* as the undertaking of the bank, executed through Wilcox as its cashier and agent, as to bring it within the rule that his want of authority to bind the bank, for which he assumed to act, does not render him individually liable, when the facts and circumstances indicate that no such liability was intended by either of the parties? In deciding this question, weight must be given to the argument that the writing of this letter will not lightly be assumed to have been a mere idle ceremony. We must assume that the parties to it intended it to have some effect. The cases in Missouri (*Michael v. Jones,* 84 Mo. 578; *Humphrey v. Jones,* 71 Id. 62; and *Cement Co. v. Jones,* 8 Mo. App. 373), relied on by counsel for defendant, were all cases in which the guardian of an insane person had traded with his ward's estate, contrary to the provisions of law, and had suffered losses. The persons dealing with him had done so with full knowledge of the fact that he was acting not for himself, but for his ward. It was held that where the facts are known to both parties, and the mistake is one of law as to the liability of the principal, the fact that the principal cannot be held is no ground for charging the agent.

We cannot apply that rule to this case, for the reason that it does not clearly and unequivocally appear that Wilcox was claiming to act for the bank, and that he was not intending to bind himself. To say that he intended to bind the bank is to suppose him ignorant of the plain rules of law governing the institution of which

he was a principal officer. There are many cases in which it has been held that the addition to one's signature of his title does not make the paper the contract of the corporation in which he is an officer. Such designation has been treated as a mere description of the person. *Tilden v. Barnard*, 43 Mich. 376; *Hayes v. Brubaker*, 65 Ind. 27.

The second argument advanced in support of the judgment is that there was no proof in the case that the plaintiff signed the replevin bond as he alleged in his declaration. I think this point is without force. The judgment record in the suit brought upon the replevin bond shows a copy of the bond set out at length in the complaint, as the only cause of action relied on. It will be presumed in support of such judgment that it was rendered after due proof of the execution of the bond declared on. For the purpose of identifying the judgment, as rendered upon the bond signed by plaintiff at defendant's request, parol testimony was admissible. I think, also, a foundation was laid for the admission of secondary evidence of the execution of the bond. It was never in the possession of the plaintiff. It was delivered in the first instance to the sheriff at Elkhart, Ind., and by him assigned to Mrs. Warner, who brought suit on it in that state. Presumably, therefore, it was out of the jurisdiction of the courts of this State, and secondary evidence of its contents was admissible. *Woods v. Burke*, 67 Mich. 674.

The third reason urged by defendant in support of the judgment is that the judgments rendered in Indiana, for the payment of which plaintiff seeks to recover, were collusive and fraudulent as to him, and that he was not bound by them. If he is right in this position, still the questions involved in such a claim are not such as should

have been passed upon by the court, as was done in this case. The question of fraud and. collusion was for the jury, and should have been submitted to them, if properly in the case, under proper instructions.

As the case must go back for a new trial, I think it proper to say that the Indiana judgments, while *prima facie* evidence of the amount which the defendant is liable to pay to indemnify the plaintiff, are not conclusive upon him. He had no notice of the pendency of the first suit, and the judgment in that suit was finally entered by consent. It is open to him to impeach the good faith of this transaction if he can do so. If Mr. Knickerbocker employed counsel in good faith to defend that action, it was proper for him to do so, and any expense incurred by him in such defense was incurred for the benefit of Wilcox, as well as himself; and Wilcox would be liable to indemnify him against such payment.. Of the suit brought by Mr. VanFleet against Mr. Knickerbocker for counsel fees, Mr. Wilcox had due notice, and was asked to defend. Having declined to do so, we think he is bound by the judgment, unless it appear that it was rendered under such circumstances of collusion between the parties as would amount to a fraud upon Wilcox.

The circuit judge was wrong in directing a verdict for the defendant, and the judgment must be reversed, and a new trial granted.

The other Justices concurred.