7746

### AYER v. HUGHES.

1. PARTITION.—Where an order of partition allows commissioners to recommend a sale any party considering himself aggrieved may bring the land to sale by making and securing a bid for a material advance in price, but he must offer to subject to sale also the part allotted to him.

2. GUARANTY.—A BANK has no power to guarantee an undertaking by another unless expressly authorized by law.

3. PARTITION.—Where parties to a partition suit consent to an order directing commissioners to be selected by them to divide lands in kind and providing that such allotment shall be binding on all parties, one party cannot have the land brought to sale after allotment by commissioners unless he can show they did not exercise their honest judgment.

Before GARY, J., Bamberg, June, 1910.   Affirmed.

Action by Carrie Ayer *et al.* against W. F. Hughes *et al.* From order overruling exceptions to report of commissioners, defendants appeal.

*Mr. J. Aldrich Wyman,* for appellants, cites: 75 S. C. 369; 10 Rich. Eq. 328.

*Mr. J. F. Carter,* contra, cites: 70 S. C. 549; 75 S. C. 373; 81 S. C. 62. *Bank has no authority to guarantee the offer:* 3 Ency. 800; 61 N. H. 589.

December 17, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action for partition the appellants, P. K. Hughes and Savilla Hughes, excepted to the report of the commissioners and sought to have sold the land assigned to the other parties in interest, alleging that the portions of land assigned to themselves had been greatly overvalued, and the portions assigned to the other parties greatly undervalued. In the complaint the plaintiffs demanded that the land be partitioned in kind, while the defendant P. K. Hughes in his answer demanded a sale of the land and a division of the proceeds. Other issues were made in the pleadings with respect to a mortgage on the interests of some of the parties held by P. K. Hughes. All these differences between the parties were finally adjusted by an order for partition, consented to by all concerned, in which it was specially provided that there should be an actual division of the land made by commissioners to be binding on all parties as follows: "It shall be the duty of the commissioners in making said partition and division to first make a survey of the entire tract of land and fix the value thereon, then partition and divide said lands in the manner following: That portion of the said tract of land where the late Mrs. Olivia E. Hughes resided, in the northeast portion, so as to include the buildings thereon, they shall cut off for the said P. K. Hughes such of said tract as will equal in value five-elevenths of the whole tract, taking into consideration the buildings and improvements thereon. Next the commissioners shall cut off adjoining said tract provided

and cut off for the said P. K. Hughes, such a portion of said land as shall equal in value one-eleventh of the whole tract for Savilla Hughes, defendant herein. The remaining portion of said land shall be divided in five lots or tracts so that each lot or tract shall be equal in value and shall be numbered from one to five, and a plat shall be made by said surveyor showing the entire survey made. These last five lots or tracts shall be allotted in the following manner: The numbers of the lots shall be written on slips of paper and placed in a hat and drawn out by a child that cannot read the numbers. The first drawn shall be allotted to Mrs. Carrie Ayer, the second to Mrs. Annie Rentz, third to Mrs. Sallie Smith, fourth to the children of the said Ella Hughes, deceased, George Folk, Bessie Folk, Hammie Folk, John Folk and Flossie Folk, fifth to the children of the said Sarah H. Ayer, deceased, T. J. Ayer, Hattie Hutto, F. C. Ayer, R. A. Ayer, Frank Ayer, and Virginia Ayer. * * * And the work of these commissioners, the partition and division of said lands made by them, shall be binding upon all the parties herein."

The commissioners, who were agreed on by counsel according to another provision of the order, found that the tract of land contained five hundred and six acres of the value of $6,600; and they set apart to P. K. Hughes as his five-elevenths interest a tract containing one hundred and eighty-five acres valued at $3,000, and to Savilla Hughes, as her one-eleventh interest, a tract of forty-nine and one-half acres valued at $600. The remainder of the land was divided into a number of tracts which were valued and set off to the other parties in interest.

In support of his contention that the return of the commissioners should be set aside as grossly unequal and unjust, P. K. Hughes submitted a large number of affidavits, all to the effect that the portions of the land assigned to him and Savilla Hughes were worth much less, and the portions assigned to the other parties were worth considerably more

than the value as assessed by the commissioners. In further support of his position P. K. Hughes submitted to the Court the following offers:

I. "To exchange the five shares which the commissioners have cut off for me, the said P. K. Hughes, for the other five shares cut off by the commissioners for Mrs. Carrie Ayer, estate of Mrs. Sallie Ayer deceased, Mrs. Sallie Smith, estate of Mrs. Ella Folk, deceased, and Mrs. Annie Rentz (one tract for each of the said parties respectively), and will pay in cash the sum of $1,000 in the exchange.

II. "P. K. Hughes offers to purchase and pay in cash the sum of $4,000 for the five shares above mentioned.

III. "P. K. Hughes offers to purchase Mrs. Carrie Ayer's tract at $900; the tract cut off for the estate of Mrs. Sallie Ayer, $750; Sallie Smith's tract, $750; the estate of Mrs. Ella Folk's tract, $800; and Mrs. Annie Rentz, $800.

IV. "P. K. Hughes offers to purchase the tract cut off for Mrs. Savilla Hughes for $200 cash.

"The above offers are made reserving, however, the question of the mortgage indebtedness to me from the estate of Mrs. Sallie Ayer, and with the further proviso that all liens of whatever kind or nature are removed from the five tracts above mentioned.

"The above offers are made to pay cash immediately upon the delivery of goods and sufficient deeds to the property named."

To this paper was attached the following guaranty: "Bamberg, S. C., July 8, 1909. To whom these presents may concern: The Peoples Bank, Bamberg, S. C., hereby guarantees the faithful performance of the attached offer to purchase real estate made by P. K. Hughes, the amount not to exceed $4,000.

PEOPLES' BANK, Bamberg, S. C.,
W. P. Riley, Cashier."

25—87

On behalf of the other parties numerous affidavits were submitted to the effect that the valuation of the several tracts made by the commissioners was correct and fair. The appeal is from an order of the Circuit Court overruling the exceptions and confirming the report of the commissioners.

Even if the order for partition had conferred upon the commissioners the powers provided by the statute, namely, to divide the land, or to assign it to one or more of the parties at a fixed valuation or to recommend a sale, none of the parties could have had the return set aside and the sale ordered on a mere showing that a large number of persons differed with the commissioners as to the value of the land. *Aldrich* v. *Aldrich.* 75 S. C. 373, 55 S. E. 887; *Allen* v. *Allen,* 76 S. C. 494, 57 S. E. 549. But when the order for partition allows the commissioners to recommend a sale, any party considering himself aggrieved by the valuation and assignment of the commissioners may bring the land to a sale by making and securing a bid for a material advance over the value assessed by the commissioners. *Moore* v. *Williamson,* 10 Rich. Eq. 328. P. K. Hughes undertook to avail himself of this rule by submitting the offers and the paper in the form of a guaranty above set out. These offers were insufficient, however, for two reasons. In the first place it seems clear that one party should not be allowed to bring the tracts assigned to others to a sale without offering on his part that such other parties at their option might bring to a sale the tract assigned to him. To allow one party to keep the land assigned to him and to require that assigned to others to be sold would in many cases produce inequality, for all the tracts of land might be greatly undervalued and yet the valuation be proportionate. Hence, when one party requires a sale of the portions assigned to others, he should offer to allow the valuation of the portion assigned to him to be submitted to the same test.

The other objection to the offers is that they are not secured: for, unless specially authorized by law, a bank has no power to make a guaranty except for the protection of its own rights or as an incident to the transaction of its own business. Thompson on Corporations, sec. 5721; Morse on Banking, sec. 65.

There is another consideration still more clearly fatal to the appeal. The issue made by their pleadings as to whether the lands should be sold or actually divided the parties themselves settled by an agreement and an order procured from the Court in pursuance of the agreement which clearly meant that the land should be divided and that it should not be sold. To emphasize this purpose they were careful to omit from the order the usual provisions for assignment of the land to one or more of the parties, or for sale in case a fair division in kind could not be made. The commissioners were agreed on to make the division and the order contained the stipulation above quoted, that "the work of these commissioners, the partition and division of said lands made by them, shall be binding upon all the parties herein." In the face of all this, clearly none of the parties could assail the action of the commissioners except upon the ground that they did not exercise their honest judgment. In *Parrott* v. *Barrett*, 81 S. C. 255, 62 S. E. 241, it was held that a bid of one of the parties substantially in advance of the valuation could not bring the land to a sale, because the Court by its order had limited the partition to a division in kind. This case is much stronger; for here there was not only an order of the Court for partition which precluded a sale, but the order showed that, after consideration of the very question, the parties had agreed that there should not be a sale, and that certain persons should divide the land. The Court cannot annul nor disregard such an agreement except upon proof that the persons agreed upon to determine the matter had not exercised their honest judgment. *Brooke* v. *Laurens*

*Milling Co.,* 78 S. C. 200, 58 S. E. 806. There was no evidence and no charge that the commissioners had not honestly endeavored to make a fair division and valuation of the land.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.